■ Richard A. Hutchens Cc, L.L.C., Appellant, v State of New York et al., Respondents. [872 NYS2d 734]—

Rose, J. Appeal from a judgment of the Court of Claims (Collins, J.), entered October 31, 2007, which granted defendants' motion for summary judgment dismissing the claim.

The contract underlying this dispute is an agreement (hereinafter the option agreement) between claimant, a residential land developer, and defendant New York State Canal Corporation which granted claimant an exclusive option to acquire easements for the development of certain residential projects along the Erie Canal. The option agreement was executed in 2001 and, in accordance with a condition precedent set forth in its terms, became effective when approved by the Comptroller in May 2002. The option agreement expressly prohibited claimant from assigning or transferring "all or any part of [claimant's interest] without the Canal Corporation's prior written consent." In August 2002, claimant entered into an agreement with Heather Associates (hereinafter the Heather agreement) that made Heather "the exclusive canal-side residential developer" for certain locations. The Heather agreement expressly referred to the option agreement between claimant and the Canal Corporation, and it is undisputed that claimant never sought the Canal Corporation's consent prior to executing the Heather agreement.

By letter dated January 2, 2003, claimant notified the Canal Corporation that it had entered into an agreement that authorized Heather to develop canal-side residential communities. After it learned that Heather had purchased rights from claimant to develop housing along defendant State of New York's canals, the Canal Corporation asked claimant to clarify the agreement and reminded claimant that the option agreement prohibited

any assignment without its consent. Claimant initially denied that the agreement accomplished any transfer, but finally provided a redacted version of the Heather agreement to the Canal Corporation in July 2003. By letter dated September 22, 2003, the Canal Corporation notified claimant that the Heather agreement violated the prohibition in the option agreement against assignment or subcontracting. The parties thereafter engaged in further correspondence whereby claimant attempted to deny and/or cure the alleged defaults and the Canal Corporation requested more information about the transaction with Heather.

On October 17, 2003, the Comptroller wrote to defendant New York State Thruway Authority, of which the Canal Corporation is a subsidiary, stating that he was rescinding his approval of the option agreement for reasons unrelated to claimant's agreement with Heather. Claimant received a copy of this letter on October 20, 2003. In the spring of 2004, claimant continued to correspond with the Canal Corporation as if the option agreement were still in effect until May 7, 2004, when the Canal Corporation issued a letter terminating the option agreement based on, among other things, claimant's unauthorized transfer of its interests to Heather in contravention of the antiassignment term of the option agreement. The termination letter also noted that the Comptroller had rescinded his approval of the option agreement on October 17, 2003, but that event was not listed as a reason for termination.

After claimant commenced this action seeking damages for the alleged unlawful termination of the option agreement, defendants successfully moved for summary judgment dismissing the claim. The Court of Claims held that the claim was untimely and, alternatively, that claimant's assignment constituted a breach as a matter of law. Claimant appeals and we affirm.

We turn first to the threshold issue of the timeliness of the claim. Under the Court of Claims Act, breach of contract claims must be filed "within six months after the accrual of such claim," but if a notice of intention to file a claim is served, then the filing period is extended to two years after accrual (Court of Claims Act § 10 [4]). "A claim accrues when damages . . . become ascertainable" (*Waters of Saratoga Springs v State of New York*, 116 AD2d 875, 877 [1986], *affd* 68 NY2d 777 [1986] [citation omitted]). Defendants argue that any damages sustained by claimant became ascertainable on October 20, 2003, when claimant received notice of the Comptroller's rescission of approval of the option agreement. That, however, was not the triggering event.

In our view, claimant's time to commence the instant action should be measured from the Canal Corporation's May 7, 2004 termination letter. Thus, we find that claimant's notice of intent to make a claim filed on July 19, 2004 was timely (*see Inter-Power of N.Y. v State of New York*, 230 AD2d 405, 408 [1997]). Although the Comptroller unequivocally rescinded approval of the option agreement in his October 17, 2003 letter, the nature and extent of any resulting damages was unclear to claimant because it was uncertain whether rescission alone would terminate the option agreement. The Comptroller's approval was a condition precedent under the option agreement, but that condition had been met and the agreement made no provision for a subsequent rescission. Further, the Comptroller's letter was directed not to claimant, but to the Canal Corporation's parent corporation, and the Canal Corporation responded by defending its actions and the validity of the option agreement. Importantly, when the Canal Corporation did terminate the option agreement, it did so pursuant to the terms of the agreement itself and for reasons other than the Comptroller's rescission. Further, because claimant's challenges to the Comptroller's authority to revoke approval of the option agreement are untimely, we will address only those arguments by claimant that go to the propriety of the Canal Corporation's stated reasons for terminating the option agreement.

Turning to the merits, we agree with the Court of Claims that defendants are entitled to summary judgment since they established that the Heather agreement was an unauthorized assignment which, pursuant to the terms of the option agreement, justified defendants' termination as a matter of law (*see e.g. Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). First, it is undisputed that the option agreement clearly and expressly prohibits assignments. In addition, the option agreement incorporates by reference the "Standard Clauses for New York State Canal Corporation Contracts" (hereinafter standard clauses) which likewise provide that the contract "may not be assigned, and no part or portion may be subcontracted [or] assigned, transferred, conveyed, sublet or otherwise disposed of without the previous consent, in writing, of [the Canal Corporation]." The terms of the option agreement, coupled with the incorporated standard clauses, provided a "clear and unambiguous prohibition" against assignments and subcontracts without the Canal Corporation's consent (*Special Prods. Mfg. v Douglass*, 159 AD2d 847, 849 [1990]).

Defendants also established that claimant made an assignment to, or subcontract with, Heather without the Canal

Corporation's consent. By its terms, the option agreement grants claimant the exclusive option to acquire easements so that claimant could develop canal-side residential communities. In the Heather agreement, however, claimant granted to Heather the exclusive right to develop such communities in six named counties. On appeal, claimant argues that whether the Heather agreement constituted an assignment presents a question of fact sufficient to withstand summary judgment in defendants' favor, but points to no disputed fact. Instead, claimant contends that the Heather agreement transfers only a portion of claimant's interest under the option agreement and, therefore, was not a true assignment. This argument ignores the express terms of the option agreement, which clearly state that claimant "shall not assign, mortgage, lease or otherwise transfer or encumber, directly or indirectly, all *or any part* of [claimant's] interest in this Agreement or in the Options, Rights of First Refusal or Sites *without the Canal Corporations's prior written consent*" (emphasis added). Claimant's argument that development would be impossible without assignment or subcontracting is also unavailing inasmuch as the option agreement does not prohibit all assignments, but only those made without prior written consent, which claimant did not attempt to obtain.

Claimant argues, alternatively, that defendants waived their right to object to the Heather agreement. "[W]aiver 'should not be lightly presumed' and must be based on 'a clear manifestation of intent' to relinquish a contractual protection" (*Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P.*, 7 NY3d 96, 104 [2006], quoting *Gilbert Frank Corp. v Federal Ins. Co.*, 70 NY2d 966, 968 [1988]). Claimant argues that because the Canal Corporation had notice as early as the spring of 2002 that claimant was working with Heather, its failure to object until 2003 evinced consent. It is not disputed, however, that the fact that claimant had executed a written contract with Heather was not revealed until January 2003 and, despite the Canal Corporation's stated concerns about that agreement and repeated requests for further information, claimant did not disclose the details of that agreement until July 2003. Contrary to claimant's arguments, the Canal Corporation's awareness that claimant was working with Heather in some capacity is insufficient to raise a question of fact as to whether the Canal Corporation waived its contractual rights under the antiassignment clauses of the option agreement. A party to an agreement who believes it has been breached does not waive the breach by electing to continue the agreement and give notice of its concerns to the other contracting party (*see Capital Med. Sys. v*

*Fuji Med. Sys., U.S.A.*, 239 AD2d 743, 746 [1997]). Here, the Canal Corporation's requests for more information about the Heather agreement convey concern rather than consent. Also unavailing is claimant's suggestion that the Canal Corporation's October 2, 2003 letter responding to claimant's belated request for approval of the Heather agreement reflects "tacit approval" of that agreement. The letter expressly states that the request is "not a waiver of the default notice dated September 22, 2003 or of any of the Canal Corporation's rights or remedies under the [o]ption [a]greement, all of which are reserved." Finally, claimant's failure to seek prior written consent is undisputed, rendering untenable its argument that the Canal Corporation's approval was unreasonably withheld.

Equally unavailing is claimant's argument that the exclusive remedy for breach of the antiassignment clause is nullification of that clause, as opposed to rescission of the entire agreement. Claimant bases this argument on the language of the antiassignment clause found within the standard clauses incorporated into the option agreement, which states that "any attempts to assign the contract without the [Canal] Corporation's written consent are null and void." However, another provision of the standard clauses states that "nothing in these standard clauses shall limit the effect of any provisions of the [option agreement] that are more favorable to the [Canal] Corporation than the terms of these clauses" and it is apparent, when the option agreement is read as a whole, that the antiassignment provision is a material term of that agreement. Indeed, the agreement emphasized the importance of the identity of the developer, stating "the qualifications and identity of the Developer and Richard A. Hutchens as its principal, are essential inducements to the Canal Corporation" and that "the identity and qualifications of the Developer and its principals are the basis for the Agreement." Further, claimant's breach was a "[t]ermination [e]vent" as defined by the option agreement. Claimant "failed to comply with any non-monetary covenant, term, condition or obligation under this Agreement," and apparently made no attempt to cure within 30 days of the Canal Corporation's notice of default. Accordingly, claimant's assignment of rights under the option agreement constituted a material breach for which defendants could elect rescission as a remedy (*see Parker v Hoppe*, 257 NY 333, 341-342 [1931]; *Manning v Manning*, 97 AD2d 910, 911 [1983]).

Peters, J.P., Kane and Kavanagh, JJ., concur; Spain, J., not taking part. Ordered that the judgment is affirmed, without costs.